# In re Alexander V.*
## (14395)

Callahan, Glass, Borden, Berdon and Santaniello, Js.

Argued May 6—decision released August 18, 1992

*In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Supreme Court.

Reporter of Judicial Decisions

*Diane Polan,* with whom, on the brief, were *John R. Williams* and *Sue L. Wise,* for the appellant (respondent).

*Susan T. Pearlman,* assistant attorney general, with whom were *Jane S. Scholl,* associate attorney general, and, on the brief, *Richard Blumenthal,* attorney general, and *Aaron Bayer,* deputy attorney general, for the appellee (petitioner).

*Howard Lawrence,* for the minor child.

*Stephen Wizner* filed a brief for the Connecticut Civil Liberties Union Foundation et al. as amici curiae.

CALLAHAN, J. This is an appeal by the respondent, Deborah V., from a judgment of the trial court terminating her parental rights with respect to her son, Alexander V. The respondent appealed to the Appellate Court, which affirmed the trial court's judgment. *In re Alexander V.,* 25 Conn. App. 741, 596 A.2d 930 (1992). This court granted the respondent's petition for certification from the decision of the Appellate Court limited to the following questions: "(1) Under what circumstances does the due process clause of the United States constitution require a determination of paren-

tal competency[1] as a prerequisite to a proceeding for the termination of parental rights? Were there sufficient indicia of incompetence in this case to have required the trial court to inquire into competency, sua sponte? (2) Was the failure of trial counsel to raise the issue of competency at trial a denial of effective legal representation that prejudiced the outcome of the termination proceedings?" *In re Alexander V.,* 220 Conn. 927, 598 A.2d 366 (1991). We affirm the judgment of the Appellate Court.

We reiterate the relevant facts of the case, as recited by the Appellate Court in its opinion. "Alexander V. was born to the respondent on July 14, 1985. Shortly thereafter, the department of children and youth services (DCYS) received a referral from Yale-New Haven Hospital concerning the respondent's ability to care for her child. Since that time Alexander has been in and out of foster care and has been under the supervision of DCYS. Since 1988, he has resided in the same foster home. DCYS filed a petition to terminate the respondent's parental rights, and, after a three day trial, the court rendered judgment terminating the respondent's parental rights." *In re Alexander V.,* supra, 25 Conn. App. 742.

I

The first question certified is divided into two parts. It asks, first, under what circumstances the due process clause of the federal constitution requires a trial court to order a competency hearing for a parent whose parental rights the state seeks to terminate. Second, it asks whether the trial court, sua sponte, should have ordered a hearing concerning the respondent's competency in this case.

[1] As reflected by the briefs and argument of the parties, "determination of parental competency" refers to a hearing on a parent's competency.

## A

The right of a parent to raise his or her children has been recognized as a basic constitutional right. *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); *Lehrer* v. *Davis,* 214 Conn. 232, 236, 571 A.2d 691 (1990). Accordingly, it has been held that the due process clause of the fourteenth amendment to the United States constitution[2] applies when a state seeks to terminate the relationship between parent and child. *Lassiter* v. *Department of Social Services,* 452 U.S. 18, 27, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981).

In determining what procedural safeguards are required by the federal due process clause when the state seeks to terminate the parent-child relationship, the United States Supreme Court has utilized the balancing test set forth in *Mathews* v. *Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976); see, e.g., *Santosky* v. *Kramer,* 455 U.S. 751, 754, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). To determine whether due process requires a competency hearing in this context, *Mathews* v. *Eldridge,* supra, 335, directs us to consider and weigh three factors: "[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

---

[2] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

We first consider the importance of the private interest that is jeopardized by the termination proceeding. "The rights to conceive and to raise one's children have been deemed essential, basic civil rights of man, and rights far more precious . . . than property rights." (Internal quotation marks omitted.) *In re Juvenile Appeal (83-CD),* 189 Conn. 276, 284, 455 A.2d 1313 (1983). The right of parents to the " ' "companionship, care, custody and management of his or her children" ' " is fundamental. Id.; *Stanley* v. *Illinois,* 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972); *Meyer* v. *Nebraska,* 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923). We have also recognized that the parent's interest includes " 'the most essential and basic aspect of familial privacy—the right of the family to remain together without the coercive interference of the awesome power of the state.' *Duchesne* v. *Sugerman,* [566 F.2d 817, 825 (2d Cir. 1977)]." *In re Juvenile Appeal (83-CD),* supra.

Unquestionably, these important rights are severely threatened by the state's initiation of termination proceedings. Such proceedings may result not only in the modification or limitation of parental rights, but may irrevocably sever the relationship between parent and child. *In re Juvenile Appeal (Anonymous)* v. *Commissioner of Children & Youth Services,* 177 Conn. 648, 671, 420 A.2d 875 (1979). This deprivation is unique and complete. *Lassiter* v. *Department of Social Services,* supra. Consequently, under the first prong of the *Mathews* v. *Eldridge* test, the private interest of a parent in a termination proceeding is considerable.[3]

---

[3] The petitioner suggests that the private interest of the child should also be considered under the first prong of *Mathews* v. *Eldridge,* 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). We do not agree. *Santosky* v. *Kramer,* 455 U.S. 745, 759, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re Juvenile Appeal (83-CD),* 189 Conn. 276, 298, 455 A.2d 1313 (1983). The child's interests are, however, implicated under the third *Mathews* v. *Eldridge* factor when we consider the state's interest as parens patriae. *Santosky* v. *Kramer,* supra, 766.

The second factor set forth in *Mathews* v. *Eldridge, supra,* requires that we examine the extent to which current procedures create a risk of an erroneous deprivation of parental rights and also that we weigh the likelihood that a competency hearing would reduce that risk.[4] Currently, there is no statute or court rule requiring a trial court in a termination proceeding to hold a hearing to determine a parent's competency.[5] In the termination setting, only General Statutes § 45a-708 (a)[6] addresses the competency issue. That provision requires that a guardian ad litem be appointed for a parent who "appears" to be a minor or incompetent. The plain language of § 45a-708 (a) does not provide for an evidentiary hearing, nor does it require any particular measures beyond the appointment of a guardian to protect the rights of an incompetent person facing the termination of parental rights.

If a parent were in fact competent during a termination proceeding, there would obviously be no risk of an erroneous deprivation of parental rights whether or not a guardian was appointed pursuant to § 45a-708 (a), and the addition of a competency hearing would not affect the accuracy of the outcome. If a parent were incompetent, however, the absence of a competency hearing could create a considerable risk of an erroneous termination of parental rights.

[4] We define competency as that term is used in the criminal context. A person is "not competent if he is unable to understand the proceedings against him or to assist in his own defense." General Statutes § 54-56d (a); see also *Dusky* v. *United States,* 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960).

[5] In contrast, General Statutes § 54-56d sets forth detailed procedures regarding the conduct of competency hearings for criminal defendants.

[6] General Statutes § 45a-708 (a) provides: "When, with respect to any petition filed under section 17a-112, section 45a-715 or section 45a-716, it appears that either parent of the child is a minor or incompetent, the court shall appoint a guardian ad litem for such parent. The guardian ad litem shall be an attorney-at-law authorized to practice law in Connecticut or any duly authorized officer of a child-placing agency if the agency is not the petitioner."

By definition, a mentally incompetent person is one who is unable to understand the nature of the termination proceeding and unable to assist in the presentation of his or her case. See General Statutes § 54-56d (a); *Dusky* v. *United States,* 362 U.S. 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960). Simply appointing a guardian ad litem for a parent in such a condition might well fail to protect the parent sufficiently against an unreliable adjudication terminating parental rights. A parent unable to understand the proceedings and unable to assist his or her attorney would likely be similarly unable to assist a guardian ad litem, and could be at a severe disadvantage in a termination proceeding because of his or her incapacity. Without the assistance of a competent parent, a guardian ad litem might be without sufficient information to rebut evidence offered by the state, which, although superficially damaging, could be refuted by a competent parent or a witness whose availability would be made known by a competent parent. Similarly, the ability of the guardian ad litem and mentally incompetent parent to offer affirmative proof of the existence or prospect of an ongoing parent-child relationship might be significantly compromised. In addition, the mentally incompetent parent might be unable to assist his or her attorney or guardian in establishing tactical and substantive goals at the termination proceeding. In sum, there is a cognizable risk that a parent unable to assist his or her attorney or to understand the proceedings might suffer an erroneous termination of parental rights regardless of whether a guardian ad litem had been appointed pursuant to § 45a-708 (a).

We must next assess the probable value of a competency hearing in reducing that risk. A competency hearing is intended to protect the accuracy of the adjudication by ensuring that the party involved "is able to provide his counsel with the data necessary or rele-

vant to the structuring of" the party's case. *State* v. *Pastet,* 169 Conn. 13, 26, 363 A.2d 41, cert. denied, 423 U.S. 937, 96 S. Ct. 297, 46 L. Ed. 2d 270 (1975). A competency hearing would afford the parties an opportunity to present the trial court with additional evidence, perhaps from expert witnesses, concerning the parent's mental state, the parent's ability to assist an attorney or guardian, and the likelihood that the parent could be restored to competency, if the court was persuaded that the parent was in fact incompetent. Thus enlightened, the trial court would be in a far better position to determine the most appropriate and beneficial course of action. In some cases, the appointment of a guardian ad litem might well constitute the best available procedure and be in accord with due process. In others, the court might conclude that a guardian ad litem alone would not be sufficient to comport with due process because of the probability that a parent could be restored to competency within a relatively short period of time. Under the latter set of circumstances, the trial court might conclude that other measures, including, possibly, a short stay of the termination proceedings, should be taken to protect the parent's fundamental right to care for his or her child. We need not decide today what specific measures the due process clause requires a trial court to take when it has determined that a parent is not legally competent. For present purposes, it is enough to recognize that a competency hearing would provide the trial court with a clearer understanding of the parent's capabilities and of the best available avenues along which to proceed. Accordingly, the availability of a competency hearing in a termination proceeding would significantly improve upon the present statutory procedure, which provides only for the appointment of a guardian ad litem, and would reduce the risk that a parent's rights might be erroneously terminated.

The third factor in the *Mathews* v. *Eldridge* balancing test concerns the government's interest, which, in this case, is twofold. *Santosky* v. *Kramer,* supra, 766. First, the state has a fiscal and administrative interest in lessening the cost involved in termination proceedings. Id. The state, however, does not suggest that the administrative costs of holding a competency hearing would be prohibitive. Second, as parens patriae, the state is also interested in the accurate and speedy resolution of termination litigation in order to promote the welfare of the affected child. We must, therefore, consider the state's interest, as parens patriae, in minimizing the delay that a competency hearing would occasion in promptly determining the child's uncertain future. As the Appellate Court correctly noted, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . . ." *In re Alexander V.,* supra, 25 Conn. App. 748. Any significant delay would undermine the state's important interest in protecting the welfare of children. This cost, and the state's interest in avoiding it, would rise as the delay increased.[7] Accordingly, we recognize that the state has a vital interest in expediting the termination proceedings and that that interest would be adversely affected by any delay necessitated by the holding of a competency hearing.

Having considered the three *Mathews* v. *Eldridge* factors, we conclude that, under certain circumstances,

---

[7] In considering the delay that a competency hearing would entail, we view only the time required to conduct the hearing, and not any delay that might be occasioned by a stay of the proceedings. We are not asked, in this case, to determine the propriety or acceptable duration of a stay of termination proceedings. Certainly it could not be expected that termination proceedings be stayed indefinitely, or for any great length of time in order to restore a parent to competency, as that would create too great a risk to the welfare of the child and might well create the anomalous situation where the very incompetency that makes termination imperative, prevents it.

due process requires that a hearing be held to determine the legal competency of a parent in a termination case. It is evident that the parent has an important interest to be protected and that the statutory procedure currently in place leaves that interest at risk of wrongful deprivation. We also recognize, however, that the state has an important interest in containing costs and in rapidly effectuating a resolution to the termination question. Moreover, in those cases in which the parent is mentally competent, a hearing would be of no utility. Accordingly, we conclude that due process does not require a competency hearing in all termination cases but only when (1) the parent's attorney requests such a hearing, or (2) in the absence of such a request, the conduct of the parent reasonably suggests to the court, in the exercise of its discretion, the desirability of ordering such a hearing sua sponte. In either case, the standard for the court to employ is whether the record before the court contains "specific factual allegations that, if true, would constitute substantial evidence of mental impairment. *Sanders* v. *United States,* 373 U.S. 1, 21, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963)." (Internal quotation marks omitted.) *State* v. *Lloyd,* 199 Conn. 359, 365, 507 A.2d 992 (1986). "Evidence is substantial if it raises a reasonable doubt about the [parent's] competency . . . ." (Internal quotation marks omitted.) Id., 366.

### B

The second part of the first certified question asks us to determine whether the trial court should have, sua sponte, ordered a competency hearing in this case. Our review of the trial record reveals that the trial court did not abuse its discretion by not doing so.

The respondent asserts that the following evidence was sufficient to require the trial court sua sponte to order a competency hearing. On several occasions

throughout May and June, 1989, approximately six months before the termination proceedings, the respondent met with Barbara P. Berkowitz, a psychologist. As a result of those interviews, Berkowitz observed that the respondent was "rather scattered and fragmented," and that her personality was "very disorganized." Berkowitz ultimately diagnosed the respondent as suffering from a "borderline personality disorder," which could best be described as a state of constant instability.[8] Berkowitz opined that the respondent would have difficulty remaining in one occupation or residence and that she did not keep stable personal relationships. She noted that the respondent's disorder would make it very difficult for her to provide her son with the "stable, nurturing, consistent environment that every child needs." Berkowitz also stated that, during two of the interviews, the respondent had misperceived Berkowitz' role. Although Berkowitz had explained that her duty was simply to evaluate the respondent, on those occasions the respondent had referred to Berkowitz as her "therapist." Finally, on two occasions during the termination hearing, the respondent approached the trial judge outside the courtroom in an apparent attempt to communicate with him.[9]

The record, however, also reveals evidence tending to indicate that the respondent was mentally competent. Despite testifying that the respondent suffered from a borderline personality disorder, Berkowitz quali-

---

[8] On December 9, 1986, Anthony F. Campagna, a psychologist, also diagnosed the respondent as suffering from a severe personality disorder.

[9] Following the second contact, the trial court stated: "I understand that these matters are difficult and we are dealing with very emotional circumstances here, that this is a mother and a child, and it's a separation of the two which is being sought on a permanent basis, and, so, therefore, I can understand the strain. But, I just want to make it absolutely clear that we are preserving the . . . separation of the Court from any of—in extra judicial involvement. . . ."

fied her diagnosis by testifying that the respondent did not require hospitalization, was not psychotic, did not hallucinate visually or orally and generally was aware of herself and her surroundings. During the dispositional hearing, the trial court asked the respondent if she understood the nature of the hearing. The respondent answered that, as she understood it, the trial court wanted to hear evidence so that it could make a decision. At the dispositional phase of the hearing, the respondent also offered a statement on her own behalf. Although the trial judge had to explain to her several times what evidence he could consider in making his decision, she ultimately delivered a relatively cohesive and forceful plea to be allowed to keep her child. Her testimony, presented without the benefit of structured questioning, demonstrated that the respondent was aware of the nature of the proceedings and that she was capable of presenting her position. Finally, the respondent's attorney never requested an inquiry into her competency and never suggested that the respondent's competency was in doubt.[10]

Despite the respondent's claim on appeal that she exhibited "bizarre and inappropriate behavior during the trial," we conclude that the trial court was not obligated to order a competency hearing sua sponte because the evidence adduced at trial fell short of raising a reasonable doubt as to whether the respondent could understand the proceedings or assist in the presentation of her case. Although the evidence established that the respondent suffered from a personality disorder, there was no testimony to indicate that such a disorder would interfere with the respondent's ability to present her case effectively. Similarly, the other alleged evidence of incompetence relied upon by

[10] The respondent also claims on appeal that her attorney's failure to call the trial court's attention to the issue of her mental competency constituted ineffective assistance of counsel. See part II of this opinion, infra.

the respondent, although relevant to the competency issue, was not sufficiently probative to raise a reasonable doubt as to her mental competency. *State* v. *Lloyd*, supra, 367.

## II

The second certified question asks whether the failure of the respondent's trial counsel to raise the issue of competency at trial resulted in a denial of her right to the effective assistance of counsel. Based on the record before us, we answer this question in the negative.

In Connecticut, a parent who faces the termination of his or her parental rights is entitled, by statute, to the assistance of counsel. General Statutes § 45a-717 (b).[11] "Because of the substantial interests involved, a parent in a termination of parental rights hearing has the right not only to counsel but to the effective assistance of counsel." *State* v. *Anonymous*, 179 Conn. 155, 160, 425 A.2d 939 (1979). In determining whether counsel has been ineffective in a termination proceeding, we have enunciated the following standard: "The range of competence . . . requires not errorless counsel, and not counsel judged ineffective

[11] General Statutes § 45a-717 (b) provides: "If a party appears without counsel, the court shall inform him of his right thereto and upon request, if he is unable to pay for counsel, shall appoint counsel to represent him. No party may waive counsel unless the court has first explained the nature and meaning of a petition for the termination of parental rights. Unless the appointment of counsel is required under section 46b-136, the court may appoint counsel to represent or appear on behalf of any child in a hearing held under this section to speak on behalf of the best interests of the child. If the respondent parent is unable to pay for his own counsel or if the child or the parent or guardian of the child is unable to pay for the child's counsel, in the case of a superior court matter, the reasonable compensation of counsel appointed for the respondent parent or the child shall be established by, and paid from funds appropriated to, the judicial department and, in the case of a probate court matter, the reasonable compensation of counsel appointed for the respondent parent or the child shall be established by the probate court administrator and paid from the probate court administration fund."

by hindsight, but counsel whose performance is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in [that particular area of the] law." (Internal quotation marks omitted.) Id. The respondent must prove that her attorney fell below this standard of competency and also "that the lack of competency contributed to the termination of parental rights." Id.

The evidence on the face of the record, which the respondent claims should have alerted her attorney to the need for a hearing on her legal competency, consists of that already recited in part I B of this opinion in connection with the claim that the trial court, sua sponte, should have held a competency hearing. Just as we concluded that there was insufficient evidence to have necessarily raised a reasonable doubt in the mind of the trial judge as to the respondent's ability to understand the proceedings or to assist in counsel's representation of her, we similarly conclude that the same evidence would not necessarily have prompted a lawyer of ordinary training and skill to raise the issue of the respondent's competency. Although there is evidence in the record relevant to the issue of the respondent's competency, we are not persuaded that counsel acted unreasonably in failing to request a hearing on the issue of competency. In order for counsel to be deemed ineffective, the evidence of incompetency must be substantial enough to support the conclusion that requesting a competency hearing was the only course of action a reasonably effective lawyer would have pursued. Because the alleged evidence of incompetency in this case fails to meet that standard, the respondent has not sustained her burden of proving counsel's ineffectiveness.

The respondent also contends that her counsel was ineffective precisely because there are insufficient indicia of incompetency on the record. She claims that

counsel failed to make an adequate record of facts tending to establish her incompetency and, consequently, blocked meaningful appellate review of this claim.[12] Although we acknowledge the possibility that counsel could, under some circumstances, be deemed ineffective for failure to make an adequate trial record of an important legal issue, we are, as an appellate court, limited to the record presented to us in deciding the merits of an appeal. Id., 160–61; *State* v. *Keating,* 151 Conn. 592, 595, 200 A.2d 724 (1964), cert. denied sub nom. *Joseph* v. *Connecticut,* 379 U.S. 963, 85 S. Ct. 654, 13 L. Ed. 2d 557 (1965). The respondent's assertion that trial counsel failed to make a record of other facts that would have required the holding of a competency hearing may not, therefore, be considered on this appeal because the existence of such other facts is not apparent on the face of the record.[13]

The judgment of the Appellate Court is affirmed.

In this opinion GLASS, BERDON and SANTANIELLO, Js., concurred.

BORDEN, J., concurring. I agree with much of the majority opinion's analysis and with its result. I reach that result, however, by a slightly different route.

---

[12] Whether the respondent could seek to supplement the factual record by bringing a collateral habeas corpus proceeding is a question not before us in this certified appeal. Although this court has generally held that a writ of habeas corpus may be sought to determine the right to custody of a minor child, we have not held that habeas corpus would lie for an ineffective assistance of counsel claim arising out of a termination proceeding. See General Statutes § 52-466; *Hao Thi Popp* v. *Lucas,* 182 Conn. 545, 551, 438 A.2d 755 (1980); *Dunham* v. *Dunham,* 97 Conn. 440, 443, 117 A. 504 (1922).

[13] We note, moreover, that counsel to the parent in a termination proceeding may be reluctant to compound the evidence of incompetence because it may jeopardize the defense of the parent's case and increase the risk of termination. See *In re R. S.,* 167 Cal. App. 3d 946, 978–79, 213 Cal. Rptr. 690 (1985).

I agree that due process of law requires a competency hearing for a parent in a termination of parental rights case where a motion for such a hearing is made, or where, absent such a motion, the record reasonably suggests the need for such a hearing. I see no reason, however, to impose that requirement outside the confines of General Statutes § 45a-708. Since we ordinarily read statutes so as to comply, rather than conflict, with applicable constitutional requirements; see *In re Valerie D.*, 223 Conn. 492, 613 A.2d 748 (1992); I would read that statute to incorporate those requirements.

Furthermore, I believe that much of the majority's discussion regarding the purported inadequacy of that statute, for purposes of due process of law, assumes that a guardian ad litem would not necessarily supply the protection that an incompetent parent would need. That is an unwarranted assumption. The appointment of an appropriate guardian ad litem might very well, in some circumstances, lead to full compliance with all due process protections for his ward. In such a case, for example, the guardian ad litem, either together with or separate from the parent's attorney, recognizing the limitations imposed on him by his ward's incompetence, might request the court to continue the case for a reasonable amount of time in order for the ward to regain competence, if that were possible. Thus, the range of options can only be gauged by the facts of the particular case, and it is premature to say in this case that the appointment of a guardian ad litem is or is not constitutionally inadequate.