## IN RE KALEB H.*
## (AC 33293)

Beach, Bishop and Mihalakos, Js.

Argued September 6—officially released October 25, 2011

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Dana M. Hrelic*, with whom were *Brendon P. Levesque* and, on the brief, *Michael S. Taylor*, for the appellant (respondent mother).

*Susan T. Pearlman*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellee (petitioner).

*Opinion*

BISHOP, J. The respondent mother[1] of the minor child, Kaleb, appeals from the judgment of the trial court committing Kaleb to the custody of the petitioner, the commissioner of children and families. The respondent claims that she was deprived of her due process rights when the court denied her counsel's request for a competency examination at a hearing on a motion filed by the respondent to revoke Kaleb's commitment to the custody of the petitioner.[2] We affirm the judgment of the trial court.

---

[1] Because the father is not a party to this appeal, we refer to the mother as the respondent.

[2] The respondent had also filed a motion for a new psychological examination, and the father had filed a motion to transfer the guardianship of Kaleb to his paternal grandmother or aunt, which were pending before the court at that time.

The following factual and procedural history is relevant to the respondent's claim on appeal. Kaleb was born on February 25, 2005. In March, 2009, the respondent was involved in an incident of domestic violence with the father of Kaleb's siblings.[3] Consequently, the respondent participated in various services offered by the department of children and families in an effort to improve her parenting skills. On March 19, 2010, the petitioner filed a neglect petition as to Kaleb on the ground that he was being denied proper care and supervision, that his medical and educational needs were not being met, that he was exposed to domestic violence in the home and that he was being permitted to live under circumstances injurious to his well-being. On May 20, 2010, the respondent pleaded nolo contendere to the allegations of neglect. Consequently, Kaleb was adjudicated neglected, and the court ordered six months of protective supervision.[4]

On June 15, 2010, the petitioner invoked a ninety-six hour hold; see General Statutes § 17a-101g; on Kaleb following the respondent's arrest for risk of injury to a child that stemmed from Kaleb's unsupervised absence from his home, for several hours, without the respondent's knowledge that Kaleb had left the home. On June 18, 2010, the court issued an order of temporary custody, placing Kaleb in the custody of the petitioner. On June 24, 2010, the petitioner filed a motion to modify the child's disposition from protective supervision to commitment. On June 25, 2010, on the basis of an agreement between the petitioner and the respondent, the court sustained the order of temporary custody. At that time, the respondent again was canvassed and

[3] The respondent's other children also were subjects of these proceedings. This appeal, however, concerns only the respondent's claims regarding Kaleb.

[4] At the neglect hearing, the respondent was canvassed in detail, and the court found that she had entered her plea knowingly, intelligently and voluntarily.

affirmed that she understood her rights, stating that she would comply with the department's requirements to get her children back. The court also ordered, based on an agreement of the parties, a psychological and psychiatric examination of the respondent, which was performed by Robert H. Neems, a psychologist.

On January 3, 2011, the respondent filed a motion to revoke the commitment and a motion for a new psychological evaluation, claiming that her test was "inaccurate as it was the first time she had taken a psychological evaluation and she was overwhelmed." In addition, the respondent claimed that she did not have ample time to counter or explain the allegations made by the petitioner and, therefore, the results of the evaluation did not "reflect an accurate portrayal of her as a parent."

On February 25, 2011, a hearing commenced on the respondent's motions, as well as a motion filed by Kaleb's father to transfer guardianship of Kaleb to his paternal grandmother or aunt. At the beginning of the hearing, counsel for the respondent then indicated to the court that the respondent had informed her that she never agreed that Kaleb was neglected. On that basis, counsel indicated that she was uncertain that the respondent would be able to assist in her defense. The court explained to the respondent that she had previously agreed to the neglect adjudication and the order of protective supervision. Counsel then requested that the respondent's competence be evaluated on the basis that the respondent claimed that she did not know what she was signing when she agreed to the neglect adjudication. The court indicated that it had read the psychological reports authored by Neems and that those reports did not support the claims of the respondent's incompetency. The court, however, advised counsel that she could inquire of Neems whether he had an opinion regarding the respondent's competency.

The court then proceeded with the hearing regarding the commitment of Kaleb.[5] Following the hearing, the

[5] Specifically, the following colloquy occurred:

"[The Respondent's Counsel]: Your Honor, something has come to my attention. In discussing with my client, I had explained to her on a couple different occasions that the children were adjudicated neglected on May 20, 2010—May—

"The Court: Right.

"[The Respondent's Counsel]: —I'm sorry—May 20, 2011.

"The Court: Right.

"[The Father's Counsel]: No.

"[The Respondent's Counsel]: I'm sorry, 2010.

"The Court: Right.

"[The Respondent's Counsel]: [The respondent] has indicated to me that she has no recollection of ever being canvassed, that she was not—that she never agreed to them being adjudicated neglected, which calls into question for me whether or not she can adequately assist me. My first suggestion would be that if Your Honor would just go back and explain to [the respondent], and if there's actually a no contest plea in the court's file, and from there I—I have to make a couple of decisions.

"The Court: Now, that's when the children were under protective supervision, correct?

"[The Respondent's Counsel]: There was an adjudication—

"The Court: Right.

"[The Respondent's Counsel]: —on May 20, and the children would've been under protective supervision.

"The Court: All right. And what's before me now is a request to modify that disposition from protective supervision to commitment.

"[The Respondent's Counsel]: That is correct, Your Honor. However, [the respondent] indicates to me that she has never agreed that they were adjudicated neglected. So, therefore, it calls into question whether or not she can adequately assist me in her defense if, in fact, there are legal concepts and issues that she truly didn't understand, didn't know what she was doing or signing. I'm not comfortable—

"The Court: Well—

"[The Respondent's Counsel]: —if, in fact, she—if she sees her signature and would like to move forward, but without that I think I may have to ask for a couple of other things before I get started.

"(Pause)

"[The Respondent's Counsel]: Your Honor, I'm sorry. Also, I was not her attorney at that time.

"The Court: I know you weren't.

"[The Respondent's Counsel]: Okay.

"The Court: I know. Marshal, give that to attorney [Tracy L.] Toce [the respondent's counsel], please?

"(Pause)

"The Court: [addressing the respondent]: . . . On May 11, you participated in a case status conference, and based on that case status conference

you came to court on May 20, and at that time I entered an order based on your plea allowing the children to remain with you under protective supervision for a period of six months beginning May 20 until November 20—until November 20, 2010.

"You were canvassed. [The father] stood silent on that day. You entered a plea of nolo contendere. I asked you all the questions. At that time you were represented by counsel. You answered all the questions. I made a finding that your plea was entered voluntarily. I accepted your plea. I adjudicated the children neglected and I ordered them to be, you know, to be with you under protective supervision for a period of six months.

"[The Respondent]: Where's the adjudication of neglect come from?

"The Court: Well, that's something that you should have discussed with your other attorney. It was based on the facts as they were set forth within the petition. So, based on that—

"[The Respondent]: Well, I have all kinds of evidence—

"The Court: —there was a finding of neglect.

"[The Respondent]: —that I was denied to file a report—

"The Court: Well, we're proceeding today with whether or not I modify the present disposition from protective supervision to commitment of Kaleb and then I decide based on that—

"[The Respondent]: (indiscernible).

"The Court: All right. Attorney Toce's representing you. So, then I decide based on whether—once I make a decision as to whether or not it's appropriate to modify the disposition from protective supervision to commitment, then I decide based on the evidence that's presented where I place the child, whether I place the child back with you, whether I allow the child to remain with the foster parents, or whether I allow the child to live with either the paternal grandmother or paternal aunt based on the recommendations that are made and based on what I believe is in the child's best interest. So, that's where we are today. All right.

"[The Respondent's Counsel]: Your Honor, I don't—I—I think—on behalf of [the respondent] I do believe she needs a competency evaluation. I mean, she—she's indicating to me she has no idea what she signed, and if she did it, she didn't know what she was doing. I don't feel comfortable going forward because I don't think she actually can assist me with the legal defense. Additionally, she has a conservator—and, frankly, I'm new to this case. However, she has a conservator of her estate, which is her father, and I—I think at this—

"The Court: Well, that's her financial estate.

"[The Respondent's Counsel]: I understand. But if she—

"The Court: Not of the person.

"[The Respondent's Counsel]: But if she's telling me that she does not know what she signed when she signed that and she was canvassed and she's saying to me now if I signed it I don't know what it was, I don't feel comfortable going forward unless she's evaluated for competency.

"The Court: Well, I read the psychological report, and there's nothing in there that would indicate that she's not competent.

"[The Respondent's Counsel]: But there wasn't—and either was never a pointed question as to whether or not she was competent. And I actually

court committed Kaleb to the custody of the petitioner.[6] This appeal followed.

On appeal, the respondent claims that the court's denial of her request for a competency evaluation deprived her of her constitutional right to due process. In support of her claim, the respondent relies on *In re Alexander V.*, 223 Conn. 557, 613 A.2d 780 (1992). In *In re Alexander V.*, a termination of parental rights case, the court utilized a two-pronged approach in deciding the issues raised in that appeal. The court considered whether "the due process clause of the federal constitution requires a trial court to order a competency hearing for a parent whose parental rights the state seeks to terminate," and then "whether the trial court, sua sponte, should have ordered a hearing concerning the respondent's competency . . . ." Id., 559.

---

talked to Dr. Neems out in the hallway, and that wasn't part of what—what he was asked to do or assessed to do.

"The Court: Well, if Dr. Neems—you know, if you want to elicit, you know, testimony from Dr. Neems that she's not competent based on his evaluation, you can do so during the course of your questioning of Dr. Neems.

"[The Respondent]: I'm very competent. I'm not psychological—

"The Court: Okay.

"[The Respondent]: —malpractice. There's a lot I do."

[6] Counsel for the respondent did, in fact, attempt to elicit testimony from Neems regarding the respondent's competence. Neems indicated that he made a finding of mild retardation, but that finding did not affect the respondent's ability to participate in court proceedings. Neems testified that his interactions with the respondent revealed that the respondent understood that her parenting skills were being evaluated but that he had not evaluated the respondent's competence to assist in her defense. On that basis, the court did not allow further questioning of Neems as to the respondent's competence. The respondent is not challenging on appeal the merits of the court's evidentiary decision limiting her questioning of Neems regarding her competence. Rather, the respondent challenges the court's decision in that regard only insofar as it relates to counsel's request for a competency evaluation and her claim of the consequential deprivation of the opportunity to establish a reasonable doubt as to her competence. Because Neems did not evaluate the respondent's competence to assist in her defense, it is difficult to discern how further questioning by the respondent would have raised a reasonable doubt as to her competence in that regard.

In that case, the court concluded: "[D]ue process does not require a competency hearing in all termination cases but only when (1) the parent's attorney requests such a hearing, or (2) in the absence of such a request, the conduct of the parent reasonably suggests to the court, in the exercise of its discretion, the desirability of ordering such a hearing sua sponte. *In either case,* the standard for the court to employ is whether the record before the court contains specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Evidence is substantial if it raises a reasonable doubt about the [parent's] competency . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 566. Because the respondent in *In re Alexander V.* failed to raise a reasonable doubt as to her competence, the court determined that she was not deprived of her due process rights by the court's failure to order a competency evaluation.[7]

Here, the respondent seeks to extend the Supreme Court's holding in *In re Alexander V.* to commitment proceedings, claiming that the same constitutional right to a competency evaluation exists in these proceedings due to the potential modification or limitation they may have on fundamental parental rights. Because we conclude, however, that the respondent did not assert any specific factual allegations that raised a reasonable

---

[7] The respondent argues on appeal that she is not seeking a competency examination in every case in which a parent's competency may be in doubt, but only in those cases "where a reasonable doubt exists in the record as to the respondent's legal competency and where counsel for the respondent specifically requests such an evaluation . . . ." In so arguing, the respondent seeks to extend the need for a competency examination to all cases in which counsel asks for such an examination. *In re Alexander V.,* however, does not stand for the proposition the respondent urges upon us. In *In re Alexander V.,* the court did not distinguish cases in which counsel makes such a request and cases in which the court should order a competency evaluation sua sponte. The court said that "in either case," the court must consider specific factual circumstances to ascertain whether there is a reasonable doubt as to competency.

doubt as to her competency, we leave for another day the question of whether the same due process right to a competency evaluation that exists in termination proceedings also pertains to commitment proceedings.

"We review the court's ruling on a motion for a competency evaluation under the abuse of discretion standard. . . . In determining whether the trial court [has] abused its discretion, this court must make every reasonable presumption in favor of [the correctness of] its action. . . . Our review of a trial court's exercise of the legal discretion vested in it is limited to the questions of whether the trial court correctly applied the law and could reasonably have reached the conclusion that it did." (Citation omitted; internal quotation marks omitted.) *State* v. *Kendall*, 123 Conn. App. 625, 651, 2 A.3d 990, cert. denied, 299 Conn. 902, 10 A.3d 521 (2010). "The trial court should carefully weigh the need for a hearing in each case, but this is not to say that a hearing should be available on demand. . . . [T]he trial judge is in a particularly advantageous position to observe a defendant's conduct during a trial and has a unique opportunity to assess a defendant's competency. A trial court's opinion, therefore, of the competency of a defendant is highly significant." (Citation omitted; internal quotation marks omitted.) *State* v. *Connor*, 292 Conn. 483, 523–24, 973 A.2d 627 (2009).

Applying these principles, we conclude that the respondent failed to make specific factual allegations sufficient to raise a reasonable doubt as to her competence. In support of her request for a competency examination of the respondent, counsel relied on the respondent's contention that she never agreed to the prior neglect adjudication. This bald assertion, giving rise to counsel's expression of doubt as to the respondent's ability to assist in the proceeding, constitutes nothing more than a conclusory allegation that is, by itself, insufficient to raise a reasonable doubt regarding

the respondent's incompetence to stand trial. See id., 524 (lack of legal and communication skills does not necessarily give rise to competency hearing); *In re Alexander V.*, supra, 223 Conn. 567 (court did not err in not ordering competency examination due to lack of reasonable doubt despite evidence that respondent suffered from personality disorder and was in state of "constant instability"); *State* v. *Lloyd*, 199 Conn. 359, 363, 507 A.2d 992 (1986) (evidence of defendant's involvement in drugs and his medical report were relevant but did not, alone, support vague, conclusory allegations of incompetency); *State* v. *Kendall*, supra, 123 Conn. App. 653 (court did not abuse discretion when it determined that defendant's belief in divine intervention did not create reasonable doubt as to competency), cert. denied, 299 Conn. 902, 10 A.3d 521 (2010); *State* v. *Bigelow*, 120 Conn. App. 632, 642–43, 994 A.2d 204 (fact that defendant was receiving medication and would require medication during course of trial does not render him incompetent), cert. denied, 297 Conn. 916, 996 A.2d 278 (2010); *State* v. *Collazo*, 113 Conn. App. 651, 662, 967 A.2d 597 (defendant not entitled to competency hearing when allegations were nothing more than brief, unsubstantiated references to psychiatric problems and use of medication), cert. denied, 293 Conn. 904, 976 A.2d 705 (2009).

Although testing of the respondent revealed her to have mild mental retardation, her diminished mental capacity, as noted, did not necessarily implicate her competence to assist in the commitment proceeding. Additionally, our review of the transcripts of proceedings occurring prior to the date of the commitment hearing reveals that the respondent appeared before the same trial judge on May 20 and November 10, 2010. Thus, the trial judge was "entitled to rely on his own observations of the [respondent's] responses during the canvassing, in light of the [respondent's] demeanor,

tone, attitude and other expressive characteristics. The trial court was in the best position to assess whether the [respondent] behaved rationally at that time." *State v. Collazo*, supra, 113 Conn. App. 663 n.6.

On the basis of the foregoing, we cannot conclude that the record contained specific factual allegations that raised a reasonable doubt as to the respondent's competency. Accordingly, we conclude that the court did not abuse its discretion in denying the respondent's motion for a competency evaluation.

The judgment is affirmed.

In this opinion the other judges concurred.