******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE PETER L.*
(AC 37231)

Beach, Mullins and Bishop, Js.

*Argued May 21—officially released June 30, 2015***

(Appeal from Superior Court, judicial district of New London, Juvenile Matters at Waterford, Driscoll, J.)

*Percy L.*, self-represented, the appellant (respondent).

*Lindsay M. Savona-Donka*, for the appellee (petitioner).

*Don M. Hodgdon* with whom was *Jammie L. Middleton*, for the minor child.

*Opinion*

PER CURIAM. In this appeal from the judgment of the trial court terminating the parental rights of the respondent, Percy L., as to his minor son, Peter L., the respondent claims that the evidence adduced at trial was insufficient to justify the termination of his parental rights and that he was denied the effective assistance of counsel at trial. We affirm the judgment of the trial court.[1]

The following factual summary is pertinent to our resolution of the issues on appeal. Peter L. was born in 2008. He is the biological son of the respondent and the petitioner, Elizabeth E., who were married in 2008 and divorced in 2010. During Peter L.'s. infancy, violence erupted between his parents, resulting in the imposition of restraining orders and protective orders in favor of the petitioner, including a no contact order restraining the respondent from engaging in various unwanted behaviors. In 2010, while such orders were in place, the respondent kidnapped the petitioner at gunpoint while she had been operating a motor vehicle, took over her vehicle, and drove a distance until the police intercepted the vehicle after she was able to obtain help at a highway stop. During this episode, the respondent, while pointing what appeared to be a handgun at the petitioner, threatened to kill her and to take his own life.[2] This criminal conduct resulted in the respondent's arrest and subsequent conviction, on his guilty plea, of kidnapping in the first degree with a firearm in violation of General Statutes § 53a-92a, and criminal violation of a restraining order in violation of General Statutes § 53a-223b. On November 9, 2012, the respondent was given a total effective sentence of fifteen years imprisonment, execution suspended after eight years. The court also imposed a standing protective order in favor of the petitioner to continue in effect until 2052.[3]

When the respondent and the petitioner separated, Peter L. was approximately eleven months old. Before his incarceration and while the marital dissolution was pending, the respondent exercised visitation rights with Peter L. on fifteen occasions but, on many of them, Peter L. was left with others and not cared for by the respondent. In its decision, the trial court commented that the respondent exercised visitation rights approximately fifteen times, despite opportunities for more, and that he often exercised this visitation as a matter of right but not interest. During Peter L.'s infancy, the respondent failed to provide adequate support for him as well, resulting in the finding of a child support arrearage at the time of the divorce.

For the first two years of his incarceration, the respondent made minimal efforts to have contact with Peter L. by correspondence and made no efforts to have

his son brought to him. Also, the respondent made no efforts to obtain any of Peter L.'s medical records or to learn of his progress in school. Beginning in 2012, the respondent did make several unsuccessful efforts to see Peter L. Peter L. was approximately eighteen months old when he last saw the respondent.

During the separation of the respondent and the petitioner, she met another man whom she subsequently married in 2013. They now have a biological child together. She, her husband, their child, and Peter L. all reside together as a family unit. Peter L., who is now called by a different name, has no recollection of the respondent and no understanding that the respondent is his biological father. His stepfather desires to adopt him.[4]

On March 21, 2013, the petitioner filed a petition in the New London Children's Probate Court to terminate the parental rights of the respondent to Peter L. pursuant to General Statutes § 45a-717. That petition was subsequently transferred to the Superior Court for Juvenile Matters in the New London Judicial District. In her petition, the petitioner alleged, as grounds for termination, that the respondent had abandoned Peter L. pursuant to § 45a-717 (g) (2) (A), that Peter L. had been denied the care necessary for his well-being as a result of the respondent's acts of omission or commission pursuant to § 45a-717 (g) (2) (B), and that there was no ongoing relationship between the respondent and Peter L. pursuant to § 45a-717 (g) (2) (C). After a three day hearing, the court found that the petitioner had proven, by clear and convincing evidence, each of the grounds alleged in the petition and that termination of the respondent's parental rights would be in Peter L.'s best interest. This appeal followed.

"We begin by setting forth the statutory requirements for granting a petition for the termination of parental rights. A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . If the trial court determines that a statutory ground for termination exists [by clear and convincing evidence], it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interest of the child. . . .

"Our standard of review on appeal from a termination of parental rights is limited to whether the challenged findings are clearly erroneous. . . . A finding is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence. . . . [An appellate court does] not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every

reasonable presumption is made in favor of the trial court's ruling." (Footnote omitted; internal quotation marks omitted.) *In re Oreoluwa O.*, 157 Conn. App. 490, 496–97,    A.3d    (2015).

The respondent claims that the evidence adduced at trial was insufficient to warrant the termination of his parental rights to Peter L. We are not persuaded. It is apparent from the record that the court heard ample evidence that would support the termination of the respondent's parental rights on the basis of any of the grounds alleged.

With respect to the ground of abandonment, the court heard and credited evidence that during Peter L.'s infancy, while his parents were separated, the respondent asserted his rights to visitation with Peter L., but on many of those occasions he actually left the child in the care of others. The court also heard evidence that in the first two years of his incarceration, the respondent made scant effort to be in communication with the child and made no effort to have the child brought to him. To be sure, incarceration alone does not constitute abandonment. See *In re Juvenile Appeal (Docket No. 10155)*, 187 Conn. 431, 443, 446 A.2d 808 (1982). The court reasonably could consider, however, the respondent's lack of genuine interest in Peter L. during his infancy and the respondent's failure to make any meaningful efforts to be in communication with Peter L. during the first two years of his incarceration. In this regard, the court could also assess, from the evidence adduced at trial, the respondent's level of apparent interest in the child before his incarceration both in regard to the number of times he actually sought to care for him and his failure to adequately support the child during his period of separation from the petitioner until his incarceration.

As to the ground concerning the denial of care as a result of the respondent's acts of commission or omission, the court heard and was entitled to credit testimony regarding the respondent's abduction of the petitioner, his threats to kill her and himself, as well as the imposition and subsequent violation by the respondent of restraining and protective orders necessitated by his abusive behavior toward the petitioner. Cf. *In re Sean H.*, 24 Conn. App. 135, 144–45, 586 A.2d 1171, cert. denied, 218 Conn. 904, 588 A.2d 1087 (1991).

In regard to the third ground for termination, that there is no ongoing parent-child relationship between the respondent and Peter L., this ground is essentially uncontested. Evidence adduced at trial made it clear that Peter L. does not know the respondent as his father and has no recollection of him.

Finally, in regard to the dispositional phase of a petition to terminate parental rights, the record amply supports the court's determination that termination of the

respondent's rights is in Peter L.'s best interest. The court heard and was entitled to credit evidence that Peter L. is living in a stable family environment with his mother, a sibling, and a stepfather who wishes to adopt him. In sum, the evidence adduced at trial was more than adequate to justify, by the applicable standard of proof, the termination of the respondent's parental rights.

The respondent also claims on appeal to this court that he was denied the effective assistance of counsel at trial. "In Connecticut, a parent who faces the termination of his or her parental rights is entitled, by statute, to the assistance of counsel. . . . Because of the substantial interests involved, a parent in a termination of parental rights hearing has the right not only to counsel but to the effective assistance of counsel." (Citation omitted; footnote omitted; internal quotation marks omitted.) *In re Alexander V.*, 223 Conn. 557, 569, 613 A.2d 780 (1992). Moreover, a parent whose rights have been terminated may assert, on direct appeal, that he or she was deprived of the right to the effective assistance of counsel at trial. See *In re Jonathan M.*, 255 Conn. 208, 235, 764 A.2d 739 (2001). "In determining whether counsel has been ineffective in a termination proceeding, [this court has] enunciated the following standard: The range of competence . . . requires not errorless counsel, and not counsel judged ineffective by hindsight, but counsel whose performance is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in [that particular area of the] law. . . . The respondent must prove that [counsel's performance] fell below this standard of competency and also that the lack of competency contributed to the termination of parental rights. . . . A showing of incompetency without a showing of resulting prejudice . . . does not amount to ineffective assistance of counsel." (Internal quotation marks omitted.) *In re Dylan C.*, 126 Conn. App. 71, 91, 10 A.3d 100 (2011).

As noted, it is the responsibility of the respondent to demonstrate trial counsel's ineffectiveness by reference to the record and not merely by allegation. In the case at hand, the respondent's claim that his trial lawyer was ineffective is unsupported by any reference to the record. Indeed, when asked by the trial judge whether he was satisfied with his trial counsel, the respondent answered: "One hundred percent." The circumstances we confront are like those found by this court in the case of *In re Dylan C.*, supra, 126 Conn. App. 71, although that case involved a termination of parental rights granted on a different ground. In *In re Dylan C.*, this court held: "[W]e need not decide whether the respondent's counsel provided assistance that fell below that of lawyers with ordinary training in termination of parental rights cases because the respondent has not demonstrated that her counsel's representation

resulted in prejudice to her." Id., 91–92. This court further stated: "Here, the respondent has not identified where in the record, and we found nowhere in the record, that she alerted the court to her dissatisfaction with counsel and asked the court to appoint new counsel. Nowhere in its memorandum of decision or in the transcript of the trial did the trial court give any indication that the respondent was not receiving effective assistance of counsel. The record discloses that the respondent's parental rights were terminated on the strength of the petitioner's case [on the ground alleged in the petition]." (Footnote omitted.) Id., 93. Just as in the case of *In re Dylan C.*, where the respondent pointed to nothing in the record to support her claim that trial counsel was ineffective, here, as well, the respondent has not supported his allegation by reference to any supporting part of the record. Mere allegations of ineffectiveness, unsubstantiated by the record, are inadequate to support a finding of ineffectiveness. The respondent has failed to demonstrate that trial counsel was ineffective.

The judgment is affirmed.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** June 30, 2015, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] In his brief, the respondent asserts, as well, that "color" was a factor in the court's decision. We assume, from this claim, that the respondent claims that race or culture, in some manner, influenced the trial's outcome. Other than this incendiary assertion, however, the respondent points to no instances in the record that relate to the race or culture of any of the interested parties. Nor does he, in his brief, provide any factual underlayment or legal support for the reviewability of this assertion newly minted for appeal. As this court has often stated, we are not required to review, on appeal, issues improperly presented on appeal through an inadequate brief. See *In re Dorrell R.*, 64 Conn. App. 455, 469, 780 A.2d 944 (2001).

[2] In its decision terminating the respondent's parental rights, the court, *Driscoll, J.*, stated that what may have appeared to be a handgun was later determined to have been a pellet pistol.

[3] While the respondent's legal status in the United States is not clear from the record, the record reflects that he was born in Peru and that he anticipates that, upon release from the custody of the Commissioner of Correction, there is the likelihood that he may be deported from the United States.

[4] At trial, a counselor from the Department of Children and Families (department) testified in support of the termination petition and also offered the department's support for stepparent adoption.