IN RE ZOWIE N.*
(AC 33575)

Bear, Espinosa and Sheldon, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

472

Argued March 6—officially released May 3, 2012**

*Erich H. Gaston,* with whom, on the brief, was *Alison P. Gaston,* for the appellant (respondent father).

*Gregory T. D'Auria,* solicitor general, with whom were *Susan T. Pearlman,* assistant attorney general, and, on the brief, *George Jepsen,* attorney general, and *Benjamin Zivyon* and *Tammy Nguyen-O'Dowd,* assistant attorneys general, for the appellee (petitioner).

*Opinion*

BEAR, J. The respondent, Jeffrey N., appeals from the judgment of the trial court, terminating his parental

** May 3, 2012, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

rights as to his daughter, Zowie N. (child or daughter).[1] On appeal, the respondent claims that the court erred in terminating his parental rights because (1) the court violated his statutory and state constitutional rights by failing to appoint counsel to represent him in the termination proceeding, (2) the court violated his right to due process by failing to order a competency evaluation before allowing him to represent himself and (3) the record did not support the court's findings that (a) the department of children and families (department) had made reasonable efforts to reunify the respondent with the child, (b) the respondent had abandoned the child, (c) there was no ongoing parent-child relationship and (d) the respondent failed to achieve a sufficient degree of personal rehabilitation. We affirm the judgment of the trial court.

The following facts inform our review. The respondent and the child's mother had a tumultuous relationship, plagued by the mother's mental health issues, substance abuse and alcohol abuse, the respondent's aberrant, defiant, enraged and violent behavior, and the couple's history of domestic violence. In April, 2008, the mother went into premature labor and was taken to a hospital where the child was born. The mother had undergone virtually no prenatal care until shortly before the child was born, and she had abused alcohol and cocaine during her pregnancy. Several days later, the petitioner, the commissioner of children and families, removed the child from the hospital under an order of temporary custody. The order of temporary custody was premised on substance abuse by the child's mother, as well as domestic violence and reckless disregard for the child's well-being on the part of the child's mother and the respondent. While the child was under the order

[1] The child's mother also was a respondent in the termination proceeding. She is not a party to this appeal, however. Accordingly, we refer to the child's father as the respondent.

of temporary custody, the department offered services to the respondent and the child's mother. The respondent took advantage of some of the offered services, which included therapy, a parenting program and regular visitation with the child. On August 10, 2009, the court adjudicated the child neglected and committed her to the care and custody of the petitioner. A petition to terminate the parental rights of the respondent and the child's mother also was filed on that date. On April 16, 2010, the child's mother consented to the termination of her parental rights.

In August, 2010, the petitioner filed a motion to amend the petition to terminate the rights of the respondent, alleging that the respondent's rights should be terminated on the grounds that he had failed to rehabilitate, that he had abandoned the child and that no ongoing parent-child relationship existed between the respondent and the child. The trial encompassed nine days, over a period beginning on September 27, 2010, and ending on March 3, 2011. The respondent represented himself at trial, with the assistance of court-appointed standby counsel. The petitioner called ten witnesses, the respondent called eight witnesses, and the respondent also testified. In a very thorough May 6, 2011 written decision, the court granted the petitioner's termination petition, thereby terminating the parental rights of the respondent.

In its memorandum of decision, the court concluded that the petitioner had proven by clear and convincing evidence, as required by General Statutes § 17a-112 (j) (1),[2] that the department had made reasonable efforts to reunify the child with the respondent. The court then

[2] General Statutes § 17a-112 (j) (1) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, unless the court finds in this proceeding that the parent is unable or unwilling to

turned to the issue of whether the petitioner had proven, by clear and convincing evidence, that the respondent had abandoned the child, that he had failed to achieve sufficient personal rehabilitation and that an ongoing parent-child relationship did not exist, as had been alleged in the petition. See General Statutes § 17a-112 (j) (3).[3] The court also considered whether termination was in the best interest of the child. See General Statutes § 17a-112 (j) (2).[4] After making the necessary findings, as required by § 17a-112 (k),[5] the court concluded that

benefit from reunification efforts, except that such finding is not required if the court has determined at a hearing pursuant to section 17a-111b, or determines at trial on the petition, that such efforts are not required . . . ."

[3] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that . . . (3) (A) the child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (B) the child (i) has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding, or (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . (D) there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day-to-day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

[4] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that . . . (2) termination is in the best interest of the child . . . ."

[5] General Statutes § 17a-112 (k) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to

the parental rights of the respondent should be terminated. Accordingly, the court granted the petition. This appeal followed. Additional facts will be set forth as needed.

I

The respondent claims that the court violated his statutory right to counsel by refusing to appoint counsel to represent him at his termination of parental rights trial.[6] The petitioner contends that the respondent

which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

[6] Insofar as the respondent also argues that he had a constitutional right to the appointment of counsel in this termination of parental rights proceeding, we are guided by our Supreme Court's decision in *State* v. *Anonymous*, 179 Conn. 155, 159–60, 425 A.2d 939 (1979), in which the court, although concluding that a respondent has a right to the effective assistance of counsel in a termination proceeding, explained that such right was not based on the federal or state constitution: "The issue of ineffective assistance of counsel at a termination of parental rights hearing is one of first impression for this court. The right to effective assistance of counsel enunciated in *McMann* v. *Richardson*, 397 U.S. 759, 771, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970), which the defendant urges us to adopt, is grounded in the sixth amendment to the United States constitution, which is expressly limited to a defendant in a criminal action. Article first, § 8, of the Connecticut constitution similarly limits the right to counsel to criminal defendants. Neither the sixth amendment to the United States constitution nor article first, § 8, of the Connecticut constitution can be extended to a parent in a termination of parental rights hearing to provide a right to effective assistance of counsel." See *In re Samantha C.*, 268 Conn. 614, 663–64, 847 A.2d 883 (2004) (although not constitutionally required that counsel be appointed for indigent parents in termination proceedings, General Statutes §§ 45a-717 [b], 46b-135 [b] and 46b-137 [b] require it); see also Practice Book § 33a-

waived his right to counsel. The respondent argues that "[f]or there to be an effective waiver of the statutory right to counsel in an action for termination of parental rights, there must be a detailed canvass, with an explanation of the consequences of proceeding on a self-represented basis, that is sufficient to ensure the waiver is knowing and intelligent." He contends that such a canvass was not conducted in this case. Additionally, he argues in his reply brief that the court was required, pursuant to General Statutes § 45a-717 (b), to inform him of his right to counsel specifically *at the termination hearing* and that in this case the court not only failed to do so, but that it refused to appoint counsel when requested to do so by the respondent at the termination hearing. We will consider this claim in three parts. In part I A of this opinion, we will consider the language of the statute, § 45a-717 (b), and whether the court properly advised the respondent of his right to counsel. In parts I B and I C of this opinion, we will consider whether the respondent effectively waived his right to counsel.

A

The respondent argues, in part, that, pursuant to the plain language of § 45a-717 (b), the court was required to "inform [him] of the right to counsel *at the hearing* on the termination petition. . . . [What occurred on] [p]rior dates [is] irrelevant." (Citation omitted; emphasis in original.) The respondent appears to assert that "the hearing" referred to in the statute is the actual trial, which, in this case, began on September 27, 2010. We conclude that § 45a-717 (b) requires the court to advise the respondent of his right to counsel when the respondent first "appears without counsel" during the

7 (a) (5). Accordingly, we conclude that the respondent did not have a constitutional right to the appointment of counsel.

termination proceedings.[7] After reviewing the transcripts of the proceedings in this case, we conclude that the court properly advised the respondent of his

[7] The court, however, also may be required to advise a respondent of his or her right to counsel at earlier proceedings pursuant to other statutes or rules of practice. For example, Practice Book (2010) § 33a-7, requires: "(a) At the preliminary hearing on the order of temporary custody or order to appear, or at the first hearing on a petition for neglect, uncared for, dependency, or termination of parental rights, the judicial authority shall:

"(1) first determine whether all necessary parties are present and that the rules governing service on or notice to nonappearing parties, and notice to grandparents, foster parents, relative caregivers and pre-adoptive parents have been complied with, and shall note these facts for the record;

"(2) inform the respondents of the allegations contained in all petitions and applications that are the subject of the hearing;

"(3) inform the respondents of their right to remain silent;

"(4) ensure that an attorney, and where appropriate, a separate guardian ad litem, has been assigned to represent the child or youth by the chief child protection attorney, in accordance with General Statutes §§ 46b-123e, 46b-129a (2), 46b-136 and Section 32a-1 of these rules;

"(5) advise the respondents of their right to counsel and their right to have counsel assigned if they are unable to afford representation, determine eligibility for state paid representation and notify the chief child protection attorney to assign an attorney to represent any respondent who is unable to afford representation, as determined by the judicial authority;

"(6) advise the respondents of the right to a hearing on the petitions and applications, to be held not later than ten days after the date of the preliminary hearing if the hearing is pursuant to an ex parte order of temporary custody or an order to appear;

"(7) notwithstanding any prior statements acknowledging responsibility, inquire of the custodial respondent in neglect, uncared for and dependency matters, and of all respondents in termination matters, whether the allegations of the petition are presently admitted or denied;

"(8) make any interim orders, including visitation, that the judicial authority determines are in the best interests of the child or youth, and order specific steps the commissioner and the respondents shall take for the respondents to regain or to retain custody of the child or youth;

"(9) take steps to determine the identity of the father of the child or youth, including ordering genetic testing, if necessary and appropriate, and order service of the amended petition citing in the putative father and notice of the hearing date, if any, to be made upon him;

"(10) if the person named as the putative father appears, and admits that he is the biological father, provide him and the mother with the notices which comply with General Statutes § 17b-27 and provide them with the opportunity to sign a paternity acknowledgment and affirmation on forms which comply with General Statutes § 17b-27, which documents shall be executed and filed in accordance with General Statutes § 46b-172 and a copy delivered to the clerk of the superior court for juvenile matters; and

"(11) in the event that the person named as a putative father appears and denies that he is the biological father of the child or youth, advise him that he may have no further standing in any proceeding concerning the child or

right to counsel when the respondent first appeared without counsel after being served with the termination petition and that this satisfies the statutory requirement set forth in § 45a-717 (b).

Issues of statutory construction are questions of law to which the plenary standard of review applies. See *In re William D.*, 97 Conn. App. 600, 606, 905 A.2d 696 (2006), aff'd, 284 Conn. 305, 933 A.2d 1147 (2007). "[A]lthough it is not constitutionally required that counsel be appointed to indigent parents in termination proceedings; *Lassiter* v. *Dept. of Social Services*, [452 U.S.

youth, and either order genetic testing to determine paternity or direct him to execute a written denial of paternity on a form promulgated by the office of the chief court administrator. Upon execution of such a form by the putative father, the judicial authority may remove him from the case and afford him no further standing in the case or in any subsequent proceeding regarding the child or youth until such time as paternity is established by formal acknowledgment or adjudication in a court of competent jurisdiction.

"(b) At the preliminary hearing on the order of temporary custody or order to appear, the judicial authority may provide parties an opportunity to present argument with regard to the sufficiency of the sworn statements.

"(c) If any respondent fails, after proper service, to appear at the preliminary hearing, the judicial authority may enter or sustain an order of temporary custody.

"(d) Upon request, or upon its own motion, the judicial authority shall schedule a hearing on the order for temporary custody or the order to appear to be held as soon as practicable but not later than ten days after the date of the preliminary hearing. Such hearing shall be held on consecutive days except for compelling circumstances or at the request of the respondents.

"(e) Subject to the requirements of Section 33a-7 (a) (6), upon motion of any party or on its own motion, the judicial authority may consolidate the hearing, on the order of temporary custody or order to appear with the adjudicatory phase of the trial on the underlying petition. At a consolidated order of temporary custody and neglect adjudication hearing, the judicial authority shall determine the outcome of the order of temporary custody based upon whether or not continued removal is necessary to ensure the child's or youth's safety, irrespective of its findings on whether there is sufficient evidence to support an adjudication of neglect or uncared for. Nothing in this subsection prohibits the judicial authority from proceeding to disposition of the underlying petition immediately after such consolidated hearing if the social study has been filed and the parties had previously agreed to sustain the order of temporary custody and waived the ten day hearing or the parties should reasonably be ready to proceed."

In accordance with the arguments raised by the respondent, we are concerned in this part of our opinion only with what is required pursuant to § 45a-717 (b).

480

18, 32, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981)]; our law requires it. See General Statutes §§ 45a-717 (b), 46b-135 (b) and 46b-137 (b)." *In re Samantha C.*, 268 Conn. 614, 663–64, 847 A.2d 883 (2004). The respondent points to two statutes that provide him with the right to counsel in termination proceedings. General Statutes § 45a-717 provides in relevant part: "(a) At the hearing[8] held on any petition for the termination of parental rights filed . . . in the Superior Court under section 17a-112 . . . any party to whom notice was given shall have the right to appear and be heard with respect to the

[8] The word "hearing" is not defined in § 45a-717. We note, however, that Practice Book § 26-1 (g) provides: " 'Hearing' means an activity of the court on the record in the presence of a judicial authority and shall include (1) 'Adjudicatory hearing': A court hearing to determine the validity of the facts alleged in a petition or information to establish thereby the judicial authority's jurisdiction to decide the matter which is the subject of the petition or information; (2) 'Contested hearing on an order of temporary custody' means a hearing on an ex parte order of temporary custody or an order to appear which is held not later than ten days from the day of a preliminary hearing on such orders. Contested hearings shall be held on consecutive days except for compelling circumstances or at the request of the respondent; (3) 'Dispositive hearing': The judicial authority's jurisdiction to adjudicate the matter which is the subject of the petition or information having been established, a court hearing in which the judicial authority, after considering the social study or predispositional study and the total circumstances of the child or youth, orders whatever action is in the best interests of the child, youth or family and, where applicable, the community. In the discretion of the judicial authority, evidence concerning adjudication and disposition may be presented in a single hearing. (4) 'Preliminary hearing' means a hearing on an ex parte order of temporary custody or an order to appear or the first hearing on a petition alleging that a child or youth is uncared for, neglected, or dependent. A preliminary hearing on any ex parte custody order or order to appear shall be held not later than ten days from the issuance of the order. (5) 'Plea hearing' is a hearing at which (i) A parent or guardian who is a named respondent in a neglect, uncared for or dependency petition, upon being advised of his or her rights admits, denies, or pleads nolo contendere to allegations contained in the petition; or (ii) a child or youth who is a named respondent in a delinquency petition or information enters a plea of not guilty, guilty, or nolo contendere upon being advised of the charges against him or her contained in the information or petition, or a hearing at which a child or youth who is a named respondent in a family with service needs or youth in crisis petition admits or denies the allegations contained in the petition upon being advised of the allegations."

petition. . . . (b) If a party appears without counsel, the court shall inform such party of the party's right to counsel and upon request, if he or she is unable to pay for counsel, shall appoint counsel to represent such party. No party may waive counsel unless the court has first explained the nature and meaning of a petition for the termination of parental rights. . . ." General Statutes § 46b-136 provides in relevant part: "In any proceeding in a juvenile matter, the judge before whom such proceeding is pending shall, even in the absence of a request to do so, provide an attorney to represent the child or youth, the child's or youth's parent or parents or guardian, or other person having control of the child or youth, if such judge determines that the interests of justice so require, and in any proceeding in which the custody of a child is at issue, such judge shall provide an attorney to represent the child and may authorize such attorney or appoint another attorney to represent such child or youth, parent, guardian or other person on an appeal from a decision in such proceeding. . . ."[9]

The respondent argues that, pursuant to § 45a-717 (b), the court was required to inform him of his right to counsel, and to appoint counsel if requested, at the start of the termination hearing. We are not persuaded. Section 45a-717 (b) very clearly states that "[i]f a party *appears without counsel,* the court shall inform such party of the party's right to counsel . . . ." (Emphasis added.) In this case, the petition to terminate the respondent's parental rights was filed on August 10,

---

[9] Although General Statutes (Rev. to 2009) § 46b-135 (b) was not cited by the parties, we also note that § 46b-135 (b) provides: "At the commencement of any proceeding on behalf of a neglected, uncared-for or dependent child or youth, the parent or parents or guardian of the child or youth shall have the right to counsel, and shall be so informed by the judge, and that if they are unable to afford counsel, counsel will be provided for them. Such parent or guardian of the child or youth shall have the rights of confrontation and cross-examination."

2009. The respondent appeared without counsel at the preliminary hearing on the termination petition, which was held on September 2, 2009. At that hearing, the court advised the respondent of his right to counsel. See General Statutes §§ 45a-717 (b), 46b-135 (b) and 46b-136; Practice Book § 33a-7 (a) (5). Specifically, the court advised the respondent in relevant part: "[A]lthough we've only recently gone through this before [during the proceedings on the neglect petition], I have to advise you of your rights since these are new proceedings. You have the right to be represented by a lawyer. If you need time to hire a lawyer, I will give you time to do so. If you or your family cannot afford to hire a private lawyer, you may apply for one. If you qualify, I will appoint one for you. This lawyer would be a licensed and fully qualified attorney who's paid by the state to represent people of limited income." When the court finished explaining the respondent's rights to him, it asked the respondent if he understood his rights, to which the respondent responded: "Ah, I believe so. Is there a possibility of me getting that in a written form so I can read it later?" The court informed the respondent that he could have a written copy of the court's explanation.[10] The court also asked the respondent if he was going to apply for an attorney, to which the respondent stated: "Um, I'm not sure at this point." The court then "strongly" recommended to the respondent that he apply for an attorney, and, at the end of the hearing, the court again "strongly recommend[ed]" that the respondent reconsider his decision to represent himself in this matter.

On the basis of this advisement, which occurred at the preliminary hearing on the termination of parental rights petition, when the respondent first appeared without counsel, we conclude that the court complied

---

[10] There is no indication in the record that the court did not supply these to the respondent, and he does not claim that he did not receive them.

with § 45a-717 (b) by advising the respondent of his right to counsel and of his right to have counsel appointed if the respondent qualified.

## B

We next will consider whether the respondent effectively waived his statutory right to counsel. The respondent argues: "In the termination context, the court should hold that in order for a waiver to be effective, there must be an express relinquishment of the right to counsel, that is not under duress or being coerced, with full understanding of the risks of self-representation and the exposure faced by the parent."

In termination of parental rights cases, our Supreme Court clearly has instructed that "waiver is . . . the intentional relinquishment . . . of a known right. . . . *Johnson* v. *Zerbst*, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L. Ed. 1461 (1938); *State* v. *Barrett*, 205 Conn. 437, 450, 534 A.2d 219 (1987)." (Internal quotation marks omitted.) *In re Baby Girl B.*, 224 Conn. 263, 296–97, 618 A.2d 1 (1992). The court also has explained, albeit in the criminal context, that "[a]lthough a defendant need not have the skill and expertise of an attorney to competently and intelligently choose to proceed pro se, a record that affirmatively shows that [he] was literate, competent, and understanding, and that he was voluntarily exercising his informed free will sufficiently supports a waiver." (Internal quotation marks omitted.) *State* v. *Flanagan*, 293 Conn. 406, 419, 978 A.2d 64 (2009).

In this case, after the preliminary hearing on the petition, at which the respondent elected to represent himself, the court appointed attorney Brian Gacek to represent the respondent. On April 6, 2010, however, Gacek requested permission to withdraw due to an irrevocable breakdown of the attorney-client relationship. The court heard the motion to withdraw on April

16, 2010, the scheduled date for the termination hearing to begin. Gacek explained that the attorney-client relationship had broken down, and the respondent stated that he had no objection to Gacek's withdrawal. The court stated: "Well, at this point, the case is scheduled for trial today, and we're going to go forward with the trial. [Respondent], it's probably in your best interest to have an attorney. Attorneys and clients don't always get along perfectly. But I think it's important for you to have an attorney that can advise you as to the legal issues in the case rather than represent yourself and not have that . . . input that he can give you." The respondent stated that he did not think it mattered because he did not believe that he could get a fair trial anyway. Gacek asked that the matter be continued and that new counsel be appointed for the respondent. The respondent stated: "Excuse me, Your Honor. I don't want any counsel appointed for me. . . . I don't want the state to be dictating what attorney I'm going to have . . . . I don't want an attorney from the state." The court questioned the respondent further, and the respondent stated that he might hire private counsel or just represent himself.

The court then told the respondent: "[I]f I grant the request for a continuance of the trial, the next time that the case is scheduled will be for trial, and you'll have to be prepared to go forward either with a private [attorney] or representing yourself. Do you understand that?" The respondent stated that he already had filed a pro se appearance and that he expected that the case would be set for trial in September. After further discussion, the court granted the motion to withdraw and explained that it was not appointing new counsel because the respondent "asked . . . not [to] have another court-appointed attorney . . . ." The respondent stated: "Correct. I understand that." At the request of the attorney for the child, the court then ordered a competency

evaluation of the respondent and, at the respondent's request, set a trial date that would begin on September 27, 2010.

It is clear from our review of the transcript of the April 16, 2010 hearing that the respondent elected, again, to represent himself and proceed without appointed counsel. He repeatedly stated that he did not want a court-appointed attorney, and, despite Gacek's request that substitute counsel be appointed and the court's warning that it was in the respondent's best interest to have counsel, the respondent very clearly declined the court's offer of appointed counsel. Even in the criminal trial context, where we are concerned with a defendant's constitutional right to counsel, "our Supreme Court [has] stated that the mere fact that the defendant would have preferred to retain private counsel of his choice, could he have afforded such counsel, does not make the waiver of a court-appointed attorney involuntary. . . . As long as the defendant clearly and unequivocally indicates that he wants to proceed pro se instead of proceeding with the public defender appointed for him, his waiver of counsel is knowing and voluntary." (Citation omitted.) *State* v. *Oliphant*, 47 Conn. App. 271, 278–79, 702 A.2d 1206 (1997), cert. denied, 244 Conn. 904, 714 A.2d 3 (1998). On the basis of the record before us, we conclude that the respondent effectively waived his right to counsel.

C

Insofar as the respondent also argues that he later reinvoked his right to counsel by requesting that attorney Michael Culkin be appointed to represent him as full rather than standby counsel, the following facts inform our consideration of this issue.

Following the respondent's refusal to have substitute counsel appointed at the April 16, 2010 hearing, the

court appointed attorney Culkin to act as standby counsel for the respondent. During a June 22, 2010 hearing, the court specifically addressed the scope of attorney Culkin's representation:

"The Court: . . . So, first of all, at this point attorney Culkin has been appointed as standby counsel so that, attorney Culkin, you're going to be available to assist [the respondent] as needed, correct?

"[Attorney] Culkin: That is correct, Your Honor.

"The Court: All right. And do you have any other— anything else that you want to put on the record as to what you think your role is as standby counsel?

"[Attorney] Culkin: Well, Your Honor, my understanding is, I was definitely appointed standby counsel for today for [the] purpose of the competency hearing. I'm presuming that I'm standby counsel for the length and duration of this trial. I think that it would be helpful for Your Honor to explain exactly what the limitations or the scope of my representation should be in this matter. I don't know if I'm conducting witness examinations or if [the respondent] is [doing that] until he tells me otherwise, you know, things of that nature . . . making objections or if I'm just suggesting objections for [the respondent] to make.

"The Court: All right.

"[Attorney] Culkin: Those types of clarifications would probably be helpful. I don't know if [the respondent] has any other, Your Honor.

"[The Respondent]: Yes.

"The Court: Go ahead.

"[The Respondent]: Your Honor, I'd like to understand attorney Culkin's role better. I filed an appearance form with the court. And when I asked for a copy of

the competency evaluation, I got a whole bunch of flak. And this court's appointed five attorneys to me throughout the short time that I've been here. Only one, attorney Gacek—there was a little hearing the last time we were here when he withdrew. And so I've had all these people in front of me, and one of them is officially not my attorney. So, I just want to know—you know, I'm looking at it as, like, I'm, like, the—I hate to use the word boss, but I'm kind of in charge. And when I call the court, I'd appreciate [it if] the court would comply with my requests. I did file an appearance form. I appreciate attorney Culkin, his advice. I spoke with him yesterday. And I think maybe he could help me understand some procedural issues with the court, seeing as how I am not an attorney.

"The Court: All right. It sounds to me that you want to take the primary responsibility for your case and to have attorney Culkin there to provide assistance on an as needed basis. Is that—

"[The Respondent]: I think at this point that role may evolve and be modified a bit. I don't do this for full-time.

"The Court: Right.

"[The Respondent]: I—you know, I got to work.

"The Court: Right. Well, it's up to you. And I think if you've made the decision that—and we'll get to the competency issue later. But if you made the decision that you want to take primary responsibility, that means that you take primary responsibility, and that if you need attorney Culkin's assistance, then you have to make sure that he understands that.

"[The Respondent]: Okay.

"The Court: But otherwise, the court is going to treat you as basically a self-represented party, which means that you can have communication with the court and

make requests. If there was misunderstanding about the competency report, I apologize for that. But you know, at this point, the court is going to treat you as being self-represented so that you can make these requests. And then when you want attorney Culkin to be involved in the case at a greater—to a greater extent, you know, you have to make that known to the court. Okay?

"[The Respondent]: Yes, sir. Yes."

On September 7, 2010, another hearing was held on the petition. The hearing was scheduled for 2 p.m., but the respondent notified the court that he estimated he would arrive approximately forty minutes late. Before the respondent arrived, the court asked attorney Culkin if he was prepared to be appointed as full counsel for the respondent. Attorney Culkin stated that he would object to being appointed as full counsel. He explained: "I've made many different attempts to communicate to [the respondent] in my role as standby versus regular counsel. And, in fact, I believe, I want to say [on] August 14, wrote him a letter and said, if you are at all [going to] change your mind, time is of the essence for me to have any opportunity to do an adequate job. I believe that it's an eight day hearing, Your Honor. I've managed to get [the respondent] to my office on two occasions, despite many invitations." The court then asked counsel to wait until the respondent arrived before proceeding any further, and it called a recess.

When the hearing resumed at 3:20 p.m., the court addressed the respondent, stating that it had been informed that the respondent wanted attorney Culkin to act "as something more than standby counsel . . . ." The respondent replied that he had discussed this with attorney Culkin and that "it [was] kind of [an] evolving issue." He further explained: "As I make motions with this court and continually get them denied, I just feel

like I'm being treated unfairly, and I thought, like, instead of me banging my head against the wall, like, maybe I let somebody else bang their head on the wall." The following colloquy then took place:

"The Court: So, do I take that as a yes?

"[The Respondent]: So, yes, Your Honor, I was considering that, yes.

"The Court: And is that still your request?

"[The Respondent]: That was something I was considering, but to be fair to attorney Culkin, it was something we were discussing. He addressed the issue, saying he wouldn't—to be all fair to myself, to my [child], to everything, that he wouldn't be able to take the case and do [an] adequate job, seeing as how the trial [is] supposed to start very shortly. And that was one reason why I requested a continuance, which was denied last week . . . . So, I don't know what to do right now, Your Honor, [because] I'm not going to be ready for the trial for the date that it's set to start.

"The Court: All right. . . . I still haven't gotten an answer to my question. I assume that you're not asking the court to appoint attorney Culkin, so there's no need to put anything on the record.

"[The Respondent]: Pardon me?

"The Court: I assume that you are not asking that attorney Culkin be your attorney in light of the discussions you've had with him.

"[The Respondent]: I did ask him, and he said he wouldn't be able to do it at this time. . . . Although I'd like to reserve the right to make a motion that attorney Culkin take the case over if I could get a continuance for the trial.

"The Court: Sir, I've already denied the motion for a continuance. The trial has been set for some time. The trial is [going] forward on September 27."

It is apparent from our review of the September 7, 2010 transcript that the respondent did not ask that attorney Culkin be appointed to represent him, but, rather, he offered a conditional possibility by stating that he might ask attorney Culkin to represent him if the court would grant a continuance. He did not attempt to revoke his previous asserted right to self-representation for the scheduled trial.

The respondent also argues, however, that he made a clear request for the appointment of counsel at the hearing on September 27, 2010, the first day of the trial, after the first witness was called to testify. The transcript of that proceeding reveals that the respondent, again, was late for court. Trial was scheduled to begin at 9:30 a.m., but the respondent telephoned the court stating that he would arrive between 10 a.m. and 10:30 a.m. At 10:37 a.m., the court stated that it had delayed the start of trial because of the respondent's telephone call, but that the respondent's late arrival was not acceptable. The petitioner, however, requested that the court give the respondent until 11 a.m. before starting the trial. The court agreed. At 11:03 a.m., the trial resumed, but the respondent still was not present. Attorney Culkin reported that he left another message for the respondent but that he had not heard from him. The court began the trial with the petitioner calling her first witness. At 11:18 a.m., the respondent appeared in the courtroom. Despite the fact that the trial already had started, the court took the time to go over several procedural matters with the respondent and explained to him, inter alia, the petitioner's burden of proof, the right to cross-examination of witnesses, the right to appeal and the right to remain silent. The respondent then voiced an objection to the court having started

the proceedings without him. Shortly thereafter, the respondent asked the court if he could have a few minutes to talk to attorney Culkin, which the court permitted. Upon resuming the hearing, the petitioner again proceeded with questioning her first witness, and the respondent then cross-examined the witness. The court took the luncheon recess immediately thereafter.

Shortly after the court again resumed the hearing, the respondent asked to withdraw as his own attorney. The following colloquy took place:

"[The Respondent]: . . . I'd like to—if I may, I'd like to withdraw as my own attorney, Your Honor. I feel that my [attention deficit disorder] is affecting how I understand the evidence and the rules of evidence. I'm not taking any medication for that. And I think that as a result of that I'm not going to get a fair trial because I don't understand the rules of evidence. Sometimes I do and sometimes I don't. But, like, there's times I don't get it and I don't understand what people are talking about, not that I'm stupid or anything. And I think my ability to be a parent should not be judged on my ability to represent myself. I'm not an attorney by profession, and I'm having a hard time going through all this and understanding all the proceedings. . . .

"And I feel I'm being forced to proceed with this. I made motions in the past for a continuance. I'm not prepared. And my computer was broken. . . . But I'm just not prepared. And if I can go about—at my own pace, I can do much better. But because things are happening so fast, I'm having a hard time understanding some of the concepts and trying to take notes. I don't know how to take shorthand or anything like that. And then to think of other good questions to [ask] when I'm cross-examining the witness, it's just not in my best interest. It's not in my daughter's best interest. It's not fair.

"And I think if—after talking to attorney Culkin, if we could have a continuance for two or three months [then] attorney Culkin could take over, [and] I think justice would be much better served. And that's what I have to say, Your Honor."

The petitioner objected to the requested delay and explained to the court that the trial date had been set since April.[11] The petitioner also argued that the respondent had the opportunity to have attorney Culkin appointed as counsel but that he had declined that opportunity previously. Attorney Nancy McMahon, counsel for the child, also objected to any further delay, stating that "[t]his has been going on for an incredible length of time. It is not fair to make my client wait another few months so that he can potentially get a lawyer. [The respondent] has been given the opportunity to get a lawyer for two years and apparently has decided not to do that. During trial is not the appropriate time to [do] this. I would object to any kind of continuance . . . ."

The court stated: "Sir, it's my understanding that you have been given numerous opportunities to have counsel. . . . Attorney Culkin represented on the record on September 7 that he was willing to step in, but he had

---

[11] We note that the trial date originally was set for April, 2010, but the court granted the respondent's request that the date be continued to September 27, 2010, a delay of more than five months. We also are mindful that time is of the essence in termination cases: "[A]s parens patriae, the state is . . . interested in the accurate and speedy resolution of termination litigation in order to promote the welfare of the affected child. . . . As [this court has] correctly noted, because of the psychological effects of prolonged termination proceedings on young children, time is of the essence. Any significant delay would undermine the state's important interest in protecting the welfare of children." (Internal quotation marks omitted.) *In re Tremaine C.*, 117 Conn. App. 521, 534, 980 A.2d 317, cert. denied, 294 Conn. 920, 984 A.2d 69 (2009). Federal law also requires that each state make a timely determination of permanency for a child. See, e.g., *In re Darien S.*, 82 Conn. App. 169, 175–76, 842 A.2d 1177, cert. denied, 269 Conn. 904, 852 A.2d 733 (2004).

a deadline for you, too. And that was unless he knew by a certain period of time that [that] was the request that you were going to make of him, he simply could not get up to speed in time. And no such request was made of him. Indeed, none was made on September 7. I will have to deny your motion. We cannot continue this matter any longer."

It is clear from our review of the entire record in this case that at the April 16, 2010 hearing, the respondent waived his right to continue to have court-appointed counsel represent and act for him prior to and at the termination hearing.[12] In an abundance of caution, the court appointed standby counsel for the respondent, and it continued the termination hearing date to a date that was agreed on by the respondent. Additionally, although attorney Culkin was not prepared to step in as full counsel at the September 7, 2010 hearing, it is apparent from the record that the court considered the respondent's untimely motion that attorney Culkin be appointed full counsel. The respondent, however, failed to answer directly the court's repeated questions as to whether he wanted attorney Culkin appointed as full counsel. See part I C of this opinion. Clearly, as of September 7, 2010, and by the time witnesses were being called on the first day of this termination proceeding, the court was not prepared to grant another several month continuance to the respondent, nor was it reasonable to expect the court to do so under the circumstances presented, which were the result of the respondent's conduct, and because of the requirements of state and federal law. Therefore, we conclude that denial of a second continuance was not an abuse of the court's discretion. "This court and our Supreme Court have held on numerous occasions that the right to counsel cannot be . . . manipulated so as to

---

[12] April 16, 2010, was the original trial date.

obstruct the orderly procedure in the courts or to inter-
fere with the fair administration of justice. . . . Partic-
ularly, the right to counsel may not be abused as a
means to impede the judicial process and to delay a
trial." (Citation omitted; internal quotation marks omit-
ted.) *State* v. *Robert H.*, 71 Conn. App. 289, 304, 802 A.2d
152 (2002), aff'd, 273 Conn. 56, 866 A.2d 1255 (2005).

We also conclude that the respondent effectively
waived his statutory right to continue to have court-
appointed counsel and knowingly and voluntarily
elected to represent himself. "It is generally recognized
that, if a person in possession of any right waives that
right, he will be precluded thereafter from asserting it
or from claiming anything by reason of it. That is, once
a right is waived it is gone forever, and it cannot be
reclaimed or recaptured, and the waiver cannot be
retracted, recalled, or expunged, even in the absence
of any consideration therefore or of any change of posi-
tion by the party in whose favor the waiver operates.
. . . [O]nce a waiver of the provisions of a statute is
made in a pending case, it is waived for the purposes
of all further proceedings in the same action." (Citations
omitted; internal quotation marks omitted.) *Matthews*
v. *Nagy Bros. Construction Co.*, 88 Conn. App. 787, 791,
871 A.2d 1067, cert. denied, 274 Conn. 907, 876 A.2d
1199 (2005); see *State* v. *Coleman*, 167 Conn. 260, 268,
355 A.2d 11 (1974) ("[r]ights once waived cannot be
regained by revoking the waiver" [internal quotation
marks omitted]); *Hendsey* v. *Southern New England
Telephone Co.*, 128 Conn. 132, 137, 20 A.2d 722 (1941);
*Lee* v. *Casualty Co. of America*, 90 Conn. 202, 208, 96
A. 952 (1916). The court did not abuse its discretion in
denying a second continuance to the respondent, nor
did the court violate the respondent's right to the
appointment of attorney Culkin or another attorney as
full counsel, the respondent having waived this right
previously.

## II

The respondent next claims that the court violated his right to due process under both the federal and state constitutions by failing to order a competency evaluation to determine his ability to represent himself. He argues that "when a competency evaluation is required in an action for termination of parental rights, and the parent involved has expressed a desire to proceed pro se, the evaluation must also determine whether the parent is competent to represent himself or herself and waive the right to counsel." The petitioner argues that the court had no duty to order, sua sponte, a second competency evaluation to establish the respondent's competence to waive his statutory right to counsel. We conclude that the respondent has failed to establish the need for a second competency evaluation or for the court to have ordered the evaluating psychiatrist specifically to address the respondent's competency for self-representation.

"We review the court's ruling on a motion for a competency evaluation under the abuse of discretion standard . . . . [T]he trial judge is in a particularly advantageous position to observe a [respondent's] conduct . . . and has a unique opportunity to assess a [respondent's] competency. A trial court's opinion, therefore, of the competency of a [respondent] is highly significant." (Citation omitted; internal quotation marks omitted.) *In re Kaleb H.*, 131 Conn. App. 829, 837, 29 A.3d 173, cert. granted on other grounds, 303 Conn. 916, 33 A.3d 739 (2011); see *In re Alexander V.*, 223 Conn. 557, 567–68, 613 A.2d 780 (1992).

"Currently, there is no statute or court rule requiring a trial court in a termination proceeding to hold a hearing to determine a parent's competency. In the termination setting, only General Statutes § 45a-708 (a) addresses the competency issue. That provision

requires that a guardian ad litem be appointed for a parent who appears to be a minor or incompetent. The plain language of § 45a-708 (a) does not provide for an evidentiary hearing, nor does it require any particular measures beyond the appointment of a guardian to protect the rights of an incompetent person facing the termination of parental rights." (Internal quotation marks omitted.) *In re Alexander V.*, supra, 223 Conn. 562. Nevertheless, "the availability of a competency hearing in a termination proceeding would significantly improve upon the present statutory procedure, which provides only for the appointment of a guardian ad litem, and would reduce the risk that a parent's rights might be erroneously terminated." Id., 564.

"[U]nder certain circumstances, due process requires that a hearing be held to determine the legal competency of a parent in a termination case. It is evident that the parent has an important interest to be protected and that the statutory procedure currently in place leaves that interest at risk of wrongful deprivation. We also recognize, however, that the state has an important interest in containing costs and in rapidly effectuating a resolution to the termination question. Moreover, in those cases in which the parent is mentally competent, a hearing would be of no utility. Accordingly, we conclude that due process does not require a competency hearing in all termination cases but only when (1) the parent's attorney requests such a hearing, or (2) in the absence of such a request, the conduct of the parent reasonably suggests to the court, in the exercise of its discretion, the desirability of ordering such a hearing sua sponte. In either case, the standard for the court to employ is whether the record before the court contains specific factual allegations that, if true, would constitute substantial evidence of mental impairment. . . . Evidence is substantial if it raises a reasonable doubt about the

[parent's] competency . . . ." (Citations omitted; internal quotation marks omitted.) Id., 565–66.

In this case, the attorney for the child, on April 16, 2010, requested that the court order a competency evaluation of the respondent, and the court granted that request. The respondent did not object to the evaluation, provided it could be performed in one session, but he explained to the court that he recently had undergone another competency evaluation so that he could represent himself in criminal proceedings and that he had been found competent by that court. The respondent also had represented himself during the neglect proceedings held earlier in this case. A competency evaluation was conducted on April 30, 2010, by David A. Krulee, a psychiatrist, who opined in relevant part that the respondent possessed "average to above average intellectual function" and that there was "no evidence of a mental disease or defect that would compromise his capacity to understand" the nature of the termination proceedings. Krulee further opined that the respondent had no "mental disease or defect of sufficient severity to compromise his capacity to cooperate with counsel" and that the respondent did not need the court to appoint a guardian ad litem. Furthermore, at the respondent's competency hearing, held on June 22, 2010, with attorney Culkin having been appointed to assist the respondent as standby counsel, the court, on the basis of Krulee's report, found that the respondent was competent to represent himself and to participate in the proceeding. Additionally, when attorney Culkin argued on the respondent's behalf that the competency evaluation report should not be a full unredacted exhibit, he stated: "Obviously, the competency report—the substance of it, you know, obviously is that [the respondent] is, in fact, competent."

The respondent argues that this court "should hold that in a proceeding for termination of parental rights,

if a trial court exercises its discretion to order a competency evaluation, and the parent subject to the evaluation also expresses a desire for self-representation, due process requires the evaluation to determine, in addition to competence to understand the proceedings and related questions, whether the parent is competent for self-representation." We are not persuaded.

Our law requires a competency hearing in a termination case when there are sufficient factual allegations of mental impairment and a respondent, or his attorney if he is represented, requests a hearing or when the conduct of a respondent reasonably suggests to the court that a hearing is necessary. *In re Alexander V.,* supra, 223 Conn. 566; see also Practice Book § 32a-9. Here, the court ordered a competency evaluation upon the request of the child's attorney. The evaluation found no mental disease or defect that would affect the respondent's ability to comprehend the proceedings, and it concluded that there was no necessity to appoint a guardian ad litem, which appointment is required pursuant to § 45a-708 (a) if a respondent is a minor or is not competent. The respondent told the court that he recently had been found competent to represent himself in a criminal proceeding, and attorney Culkin agreed that the competency evaluation "obviously" demonstrated that the respondent was competent. The court also found that the evaluation demonstrated that the respondent was competent to represent himself. It is clear from our review of the record that the court did not question the respondent's competence, nor did the competency evaluation raise any question as to the respondent's competence. Additionally, the respondent fails to cite to any substantial evidence in the record that would demonstrate that the court abused its discretion in this case. See *In re Alexander V.,* supra, 223 Conn. 566 (standard for court to employ is whether record contains specific factual allegations that, if true,

would constitute substantial evidence of mental impairment). Accordingly, the respondent has failed to demonstrate that a second competency evaluation was required in this case or that the court was required to order Krulee to address specifically the respondent's competency for self-representation.

## III

The respondent also claims that the court erred in terminating his parental rights.[13] Specifically, he claims that the record did not support the court's findings in the adjudicatory phase of the hearing that (1) the department had made reasonable efforts to reunite him with the child and (2) the respondent failed to achieve personal rehabilitation.[14] We disagree.

"The legal framework for deciding termination petitions is well established. [A] hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [(j) (3)] exists by clear and convincing evidence. . . . If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. During the dispositional phase, the trial court

[13] The respondent does not contest the court's finding that termination of the respondent's parental rights was in the best interest of the child.

[14] The respondent also claims that the trial court improperly found that he had abandoned the child and that there was no ongoing parent-child relationship. Because we conclude that there was clear and convincing evidence to support the trial court's finding that the respondent had failed to achieve sufficient personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (i), we do not discuss the court's findings that the petitioner also had proved by clear and convincing evidence these grounds for termination. See *In re Melody L.*, 290 Conn. 131, 143 n.9, 962 A.2d 81 (2009) (declining to review sufficiency of other grounds for termination because one ground sufficient to uphold decision of trial court).

must determine whether termination is in the best interests of the child. . . . The best interest determination also must be supported by clear and convincing evidence." (Citations omitted; internal quotation marks omitted.) *In re Davonta V.*, 285 Conn. 483, 487–88, 940 A.2d 733 (2008).

"It is axiomatic that a trial court's factual findings are accorded great deference. . . . On appeal, our function is to determine whether the trial court's conclusion was factually supported and legally correct. . . . In doing so, however, [g]reat weight is given to the judgment of the trial court because of [the court's] opportunity to observe the parties and the evidence. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [Rather] every reasonable presumption is made in favor of the trial court's ruling. . . . Proof of one ground is sufficient to terminate parental rights." (Citation omitted; internal quotation marks omitted.) *In re S.D.*, 115 Conn. App. 111, 116–17, 972 A.2d 258 (2009).

A

The respondent first claims that the trial court improperly found that the department had made reasonable efforts to reunify him with the child. More specifically, he explains that the child "was removed at birth because of [the mother's] prenatal alcohol and drug use. [The respondent] never had an opportunity to be in an intact family with [the child]. There was no nexus between the [respondent's] conduct and the removal. . . . [The respondent] does not have any substance abuse or alcohol issues. . . . His primary issue was the troubled relationship with the [child's mother]. . . . The [petitioner] did not offer any services specific to helping the respondent understand the nature of his relationship with the [child's] mother, nor was cutting

off all contact with the [child's] mother a specific step ordered by the trial court." (Citations omitted.) Additionally, the respondent asserts: "The [respondent] needed much more frequent contact with [the child] and assistance in understanding and transitioning out of the relationship with the [child's] mother. Instead, the [petitioner] was resistant to increased visitation . . . [and] [i]f no contact with the [child's] mother was a condition precedent to reunification, the [respondent] should have been told in clear, concrete and unequivocal terms, including by way of specific steps." In response, the petitioner asserts that "[t]he undisputed evidence provided clear and convincing proof that [the department] made reasonable efforts to help the [respondent] but that he had not benefited from these services." We agree with the petitioner.

After the child was placed in the petitioner's custody in April, 2008, in part because of the parents' domestic violence and their reckless disregard for the child's well-being, the department offered to the respondent numerous services and programs to aid in his reunification with the child. The trial court found that the department arranged and provided the respondent visitation with the child, first at the petitioner's office and then at the child's foster home. Because of conflict between the foster parents and the respondent, however, visitation was moved back to the petitioner's office. Sometimes, visitation also occurred outdoors. Although the respondent wanted increased visitation with the child, when the court provided that increase, the respondent continually complained that the increased scheduling did not accommodate his work schedule, while the petitioner contended that the respondent's proposed schedule did not accommodate the needs of the child. In the first three weeks of December, 2009, the respondent elected to exercise only seven of his fourteen allotted

visitation dates, and, on December 22, 2009, the respondent unilaterally stopped visiting the child altogether. At that time, the child was twenty months old. It was not until July, 2010, that the respondent resumed visitation with the child. Following that six month hiatus in visitation, however, the child was reluctant to participate in visitation sessions with the respondent. In September and October, 2010, the child cried during the entire drive to the visitation site and was reluctant to interact with the respondent.

The court further found that the department had provided "assistance in counseling, mental health and parenting through Dr. Edward Edgars at the Counseling Center in Waterbury, with Dr. Maria Haven at Counseling to Therapy on the Run, education about substance abuse at the McCall Foundation so that [the respondent] could better understand [the] . . . difficulties with substance abuse [faced by the child's mother] and the effect on [the child], and the DOVE program at Wheeler Clinic for domestic violence issues." On the basis of these findings, the court concluded that the "clear and convincing evidence reveals that [the department] has made reasonable efforts to reunite [the respondent with the child], however, [the respondent] has been unable to benefit from those efforts." On the basis of the record before us, we conclude that the court's finding that the department made reasonable efforts to reunify the respondent with the child was not clearly erroneous.

B

The respondent also claims that there was insufficient evidence to support the court's finding that he had failed to achieve sufficient personal rehabilitation pursuant to § 17a-112 (j) (3) (B) (i). Specifically, the respondent argues that according to the petitioner, "the reason [he] did not achieve personal rehabilitation is his failure to separate himself from the [child's] mother.

. . . [Because] the [department's] efforts at reunification were not sufficient as a matter of law . . . the [respondent] . . . cannot be charged with failure to rehabilitate." He further explains: "[T]he specific steps in this case . . . were insufficient in that they did not inform the [respondent] that as a condition precedent to reunification with [the child], he had to have no contact or involvement with the [child's] mother." We disagree.

In the present case, the petitioner alleged in her petition that the respondent, in part, had failed to achieve sufficient rehabilitation pursuant to § 17a-112 (j) (3) (B) (i). That statute provides for the termination of parental rights where the child "has been found by the Superior Court or the Probate Court to have been neglected or uncared for in a prior proceeding . . . and the parent . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." General Statutes § 17a-112 (j) (3) (B).

"[P]ersonal rehabilitation . . . refers to the restoration of a parent to his or her former constructive and useful role as a parent [and] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . [I]n assessing rehabilitation, the critical issue is not whether the parent has improved [his] ability to manage [his] own life, but rather whether [he] has gained the ability to care for the particular needs of the child at issue." (Citation omitted; internal quotation marks omitted.) *In re Summer S.*, 124 Conn. App. 540, 545, 5 A.3d 972 (2010).

Our review of the record in this case reveals that the evidence credited by the trial court supports its finding that the respondent failed to achieve sufficient personal rehabilitation. First, as determined in part III A of this opinion, contrary to the respondent's allegations, the evidence supports the court's finding that the department made reasonable efforts at reunification but that the respondent was unable to benefit from those efforts.

Second, we disagree with the respondent that the specific steps were significantly ambiguous.[15] As stated by the court, "[t]he specific steps for [the respondent] . . . require[d], inter alia, that [he] adequately address mental issues and gain an understanding of how domestic violence and mental illness negatively affect children. [Although the respondent] has been exposed, through [the petitioner's] efforts and his own to therapy for these issues, *he has not benefited from them.*" (Emphasis added.) The court also found that the respondent had failed to refrain from further involvement with the criminal justice system, despite this being another specific step in his rehabilitation process. Additionally, the court found that, as of the date of the original termination petition, the respondent still was "involved in the tempestuous and destructive relationship with [the child's mother] that created a dangerous

_____

[16] The specific steps for the respondent were ordered on April 22, 2008. They included the respondent's participation in parenting, family and individual counseling as necessary with treatment goals pertaining to overcoming domestic violence and mental health issues, developing parenting skills, gaining an understanding of how domestic violence, substance abuse and mental illness negatively impact a child, and working toward reunification. The respondent also was ordered to visit the child as often as the petitioner permitted him to do so, and to have no further involvement with the criminal justice system. The respondent's unwillingness to participate meaningfully in therapy was evidenced by his statement "that he was attending sessions only because [the petitioner] had told him to do so and that he did not have any need for the therapeutic assistance." The respondent also failed to attend scheduled visitation and had new involvement with the criminal justice system.

environment for [the child] and precluded [the respondent] from developing the skills he needed to become a resource for [the child]. [The petitioner] had communicated to [the respondent] that it was essential that he address the issues of his mental health, domestic violence, and codependency. [He] also was advised that it was essential that he take responsibility for his own actions, and come to an understanding of the effect of substance abuse by [the child's mother] on his and her relationship and the effect of this and domestic violence on [the child]. When [the respondent] was reminded by the [petitioner] that his relationship with [the child's mother] constituted a barrier to reunification with his daughter because of the domestic violence and volatility of the relationship, [the respondent] responded that he loved [the child's mother] and he would not give up on her. The evidence clearly reveals that [the respondent] had not been successful in beginning to overcome these problems." The court also found that the respondent failed to accept responsibility for the circumstances that caused the child to be placed with the petitioner and that he blamed others, including the petitioner, the child's mother, the foster parents, the social workers and the police for his problems. Our review of the record reveals that these findings are not clearly erroneous. Furthermore, despite the respondent's arguments to the contrary, it is clear from our review of the entire record in this case that the respondent was on notice that his relationship with the child's mother was a barrier to reunification and to his personal rehabilitation.[16] When the court initially committed the child to the custody of the petitioner, the court found that reunification would not be in the child's best interest "so long

---

[16] Ralph P. Balducci, a psychologist who evaluated the respondent and the child's mother, summarized their relationship as toxic and codependent. He stated that, shortly after the child's birth, they attempted to separate because they knew that the child could not be placed with the respondent if they remained together, but that they have been unable to do so. He opined that he could not support the child's reunification with the respondent.

as [the respondent] continues to be involved with [the] mother."[17]

On the basis of the evidence presented, the court specifically found that the child had been adjudicated neglected in a prior proceeding and that the petitioner had met her burden of establishing, by clear and convincing evidence, that the respondent had "failed to achieve a degree of rehabilitation that would encourage a belief that he could assume responsible parenting of his daughter within a reasonable time, considering the needs and circumstances of the child." We conclude that there was clear and convincing evidence in the record to support the court's findings.

The judgment is affirmed.

In this opinion the other judges concurred.

[17] "In determining whether a parent has achieved sufficient personal rehabilitation, a court may consider whether the parent has corrected the factors that led to the initial commitment, regardless of whether those factors were included in specific expectations ordered by the court or imposed by the department. . . . Accordingly, successful completion of expressly articulated expectations is not sufficient to defeat a department claim that the parent has not achieved sufficient rehabilitation." (Citations omitted.) *In re Vincent D.*, 65 Conn. App. 658, 670, 783 A.2d 534 (2001).